# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1599-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

C.L.D.,

      Defendant-Appellant,

and

M.F. and D.R.,

      Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.M.L.,
N.L.D., and N.D.D., minors.

_____

Argued October 20, 2021 – Decided November 12, 2021

Before Judges Hoffman, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0159-20.

Daniel DiLella, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Daniel DiLella, on the briefs).

Wesley Hanna, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Wesley Hanna, on the brief).

Nancy P. Fratz, Assistant Deputy Public Defender, argued the cause for the minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Nancy P. Fratz, of counsel and on the brief).

PER CURIAM

Defendant C.L.D.[1] appeals from the January 27, 2021 judgment of guardianship terminating her parental rights to her minor children, fourteen-year-old N.L.M. (Nora), eight-year-old N.L.D. (Nina) and four-year-old N.D.D. (Noah).[2] Defendant contends the Division of Child Protection and Permanency

---

[1] Pursuant to Rule 1:38-3(d), we use initials and pseudonyms to protect the parties' privacy. For ease of reference, we refer to C.L.D. as defendant.

[2] None of the fathers of defendant's children are parties to this appeal. Nora's father voluntarily surrendered his parental rights and the fathers of the other two children had their parental rights terminated by default. Nora, Nina, and Noah are now age fourteen, eight, and four, respectively.

(the Division) failed to prove each prong of N.J.S.A. 30:4C-15(a) by clear and convincing evidence. The Division and the children's Law Guardian urge this court to affirm.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons set forth in Judge Francine I. Axelrad's comprehensive oral decision. We add the following comments.

To obtain termination of parental rights, the Division must satisfy all four prongs of the following test:

1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;

2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

3) The Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

3

> 4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C:15.1(a).]

These four prongs are neither discrete nor separate, but overlap "to provide a comprehensive standard that identifies a child's best interests." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (citation omitted); In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). "The considerations involved are extremely fact sensitive and require particularized evidence that address[es] the specific circumstances in the given case." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 554 (2014) (citation omitted) (alteration in original). The Division must prove by clear and convincing evidence all four statutory prongs. Ibid.

Our review of the Family Part judge's decision in a guardianship case is limited. R.G., 217 N.J. at 552. "[T]he trial court's factual findings should be upheld when supported by adequate, substantial, and credible evidence." Ibid. We accord deference to factual findings of the Family Part given its "superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." F.M., 211 N.J. at 448. We will not overturn a family court's findings unless they were "so wide

A-1599-20

of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).

We will not recite in detail the history of the Division's involvement with defendant. Instead, we incorporate Judge Axelrad's factual findings and legal conclusions. In her oral opinion, Judge Axelrad reviewed the evidence presented and thereafter concluded that: 1) the Division had proven all four prongs of the best-interest test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and 2) termination of defendant's parental rights was in Nora, Nina, and Noah's best interests.

Defendant's children have been in the Division's custody since August 14, 2017, shortly after Noah was born suffering from withdrawal symptoms. In the years that followed, the Division provided myriad opportunities for defendant to reunify with her children and address her long-standing substance abuse and mental health issues. None of these interventions proved successful because defendant did not regularly participate in services. Defendant regularly failed to attend services without providing notice. When defendant participated in services, she often appeared disinterested or emotionally abused her children.

The Division investigated each family member defendant proffered as potential caregivers for the children, but none proved suitable. Noah was placed

in three resource homes before finding his current resource home with J.R. and R.A., who are committed to adopting him. In fact, J.R. and R.A. have taken steps to facilitate Noah's establishing a relationship with his sisters.

At the request of the Division, Dr. Alan J. Lee, a psychologist, evaluated the bond between Noah, J.R., and R.A. Although Noah remains in the process of forming a significant and positive psychological attachment with J.R. and R.A., Dr. Lee opined that he expected the attachment would solidify in the coming months. Dr. Lee cautioned that, if Noah were removed from the care of J.R. and R.A., he would be at a significant risk of harm. Ultimately, Dr. Lee opined that permanency was important for all children, and that Noah could readily achieve permanency through adoption by his current caretakers.[3]

At the time of Judge Axelrad's opinion, Nora and Nina lived with their maternal uncle and his girlfriend; however, allegations of abuse caused the Division to remove the girls from the uncle's home approximately two months ago. Notwithstanding this recent change of placement, the Division and the Law

---

[3] In March 2020, the court ordered defendant to submit to psychological and bonding evaluations. Despite receiving notification from the Division, defendant failed to attend the evaluation, which the Division then rescheduled multiple times, without success.

Guardian continue to maintain that termination of C.L.D.'s parental rights is in Nora and Nina's best interests. We agree.

The record contains an abundance of evidence of past and ongoing harm to all three children caused by defendant's alcoholism, uncontrollable behavior, inability to provide basic care, physical abuse, and emotional cruelty. Nina and Noah both suffered withdrawal symptoms following their births. Defendant repeatedly hit Nora and Nina with a belt and spanked them. Nora carries a scar under her eye from a cigarette burn. Defendant told Nora to remain in her room while she entertained men, which Nora overheard. Defendant gave these men permission to beat Nora and Nina. When she was just four years old, Nina said "Let's have sex" to another child; in addition, Nina made a sexual gesture in which she demonstrated a stroking motion on a finger. Nina revealed that she learned this behavior at home. Furthermore, during an evaluation at N.J. Cares Institute, Nina divulged that she has seen "grown up parts" and that it would be too hard to discuss.

Defendant repeatedly missed appointments to see Nora and Nina, leaving them dejected. Indeed, defendant cancelled appointments to see her children as punishment for the children not paying enough attention to defendant. When defendant saw her children, she often ridiculed Nora, calling her "fat" and a

7

"liar." Nora revealed that defendant "drinks a lot of cough syrup." She also revealed that defendant "always pops [blue] pills."

In light of these facts, we find it immaterial that Nora and Nina have been placed in a new resource home. Nothing in the record suggests that the Division will be unable to find an adoptive home for Nora and Nina. Termination of defendant's parental rights remains in the best interests of all three children.

After reviewing the record, we conclude that the record fully supports Judge Axelrad's factual findings and, in light of those facts, her legal conclusions are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1599-20